[S.F. No. 23271. In Bank. Oct. 30, 1975.]

RODNEY P. KINNEY et al., Plaintiffs and Appellants, v.
CARMEL VALLENTYNE, Defendant and Respondent.

476

**COUNSEL**

Charles J. Williams for Plaintiffs and Appellants.

Dolgin, Kully & Jameson, David A. Dolgin and Leonard A. Kully for Defendant and Respondent.

**OPINION**

**MOSK, J.**—The sole issue on this appeal is whether the award of community realty to a wife in a divorce proceeding cuts off the right of a judgment lien creditor of the husband to reach any subsequent increase in the value of the equity in that property. We have concluded that it

does not, and that the declaratory judgment to the contrary must therefore be reversed.

In 1965, during the marriage of Donald and Carmel Vallentyne, Donald committed certain personal torts against one Nadine Kinney. Nadine and her husband Rodney (hereinafter plaintiffs) instituted an action for damages against Donald. While that action was pending, Carmel sued Donald for divorce.

The chronology of the disposition of these actions is important. On September 5, 1967, Carmel was granted an interlocutory decree of divorce. On September 27, 1967, in the tort action, plaintiffs obtained a personal judgment for damages against Donald.[1] On November 29, 1967, plaintiffs recorded an abstract of their judgment in Contra Costa County. At the time, Donald and Carmel owned as community property three parcels of improved realty in Contra Costa County. On September 27, 1968, a final decree of divorce was entered awarding Carmel, inter alia, the three parcels of realty as her separate property.

Code of Civil Procedure section 674 provides in relevant part that when an abstract of judgment is recorded it "becomes a lien upon all the real property of the judgment debtor, not exempt from execution, in such county, owned by him at the time, or which he may afterward and before the lien expires, acquire. Such lien continues for 10 years from the date of the entry of the judgment . . . ."

In 1970, unable to satisfy their judgment out of Donald's personal assets, plaintiffs filed the present action against both Carmel and Donald;[2] in their amended complaint plaintiffs prayed for a declaration that they are entitled to enforce their judgment lien against the community real property awarded to Carmel by the divorce decree. The court declared that such property may be applied towards the satisfaction of plaintiffs' judgment, but only to the extent of the value of the equity in the property as of the date of the *interlocutory* decree of divorce, i.e., September 5, 1967.

That judgment was appealed. In an unpublished decision (*Kinney* v. *Vallentyne* (July 20, 1973) 1 Civ. 31938), the Court of Appeal determined

---

[1]Donald apparently did not appeal from the judgment. (See *Kinney* v. *County of Contra Costa* (1970) 8 Cal.App.3d 761, 765 [87 Cal.Rptr. 638].)

[2]Donald is a nominal defendant only; he did not appear at the trial or in any subsequent proceedings.

that the community property was liable for Donald's judgment debt, but that the divorce court did not distribute that property until the final decree, i.e., on September 27, 1968. Accordingly, the Court of Appeal held that when plaintiffs recorded their abstract of judgment the real property now in issue was still community in nature, and when Carmel took title thereto as her separate property it was therefore "subject to the judgment lien" of plaintiffs.

The judgment of the Court of Appeal was a general reversal.[3] On remand the parties stipulated that no further trial proceedings were necessary, and the matter was submitted on the evidence presented at the prior hearing. The court rendered a judgment identical to its first decision, save for a new cutoff date: it declared that the community real property awarded to Carmel may be applied towards the satisfaction of plaintiffs' judgment, but only to the extent of the equity in the property as of the date of the *final* decree of divorce. Plaintiffs appeal.

Certain matters are established by the doctrine of the law of the case.[4] Thus we are bound by the dual determinations of the court on the prior appeal that (1) the community property of Donald and Carmel—including the parcels of realty here in issue—was liable for Donald's judgment debt and (2) at the time such parcels were awarded to Carmel, plaintiffs' lien had already attached and she therefore took title "subject to" that lien. Indeed, no party to this appeal disputes either of these propositions.

■ The sole remaining issue is whether the trial court erred in denying plaintiffs the right to reach any increase in the value of the equity in the property occurring after title vested in Carmel. Carmel urges that the law of the case is dispositive of this issue as well, and in her favor. But the prior opinion of the Court of Appeal was silent on the point, and the question is therefore open for decision.

There is no authority for the limitation placed by the trial court on the effect of plaintiffs' lien. "A judgment lien has always been regarded as the highest form of security to a creditor." (*Morton* v. *Adams* (1899) 124 Cal. 229, 231 [56 P. 1038].) Code of Civil Procedure section 674 declares that such a lien attaches not only to all real property owned by the judgment debtor in the county at the time it is perfected, but also to all

[3]No petition for hearing was filed in this court.

[4]The doctrine applies to an appeal heard in this court after a remand ordered by the Court of Appeal. (*People* v. *Shuey* (1975) 13 Cal.3d 835, 841-842 [120 Cal.Rptr. 83, 533 P.2d 211].)

real property in the county which the debtor "may afterwards . . . acquire" at any time within the 10-year life of the lien. If the creditor can thus reach wholly distinct parcels of property which the debtor did not even own when the abstract of judgment was recorded, a fortiori he can reach any and all increases in the value of the equity in property owned by the debtor at the time of such recordation and already subject to the lien. In short, when the creditor enforces his lien he is entitled to satisfy his judgment to the fullest extent possible out of the real property then owned by the debtor, i.e., out of the debtor's entire equity in the property valued as of that date,[5] regardless of how or when the debtor may have acquired such equity.

Nor does a different result follow merely because the debtor transfers his title to the property to another after the lien attaches.[6] Under section 674, there is no lien unless and until the abstract of judgment is recorded. But precisely because of that recordation, the transferee takes with constructive notice of both the original amount of the judgment and the remaining life of the lien. He is presumed to know that if the value of the property at the time of transfer is insufficient to satisfy the judgment debt as it then stands,[7] the creditor will be entitled to reach any future increase in the equity in the property occurring before he enforces the lien. Knowing this risk, during the life of the lien the transferee contributes to the equity in the property at his peril.

Nor, finally, is a different outcome dictated in the case at bar simply because the debtor and transferee were formerly husband and wife. Section 674 contemplates no special rule for domestic relations cases. (Cf. Code Civ. Proc., § 674.5 [lien of judgment for alimony or child support].) It is irrelevant for the purposes of the judgment lien law that the property in question was once community realty and was awarded to Carmel as her separate property in the final decree of divorce, or that since that date she has made payments out of her separate funds to maintain or improve the premises, reduce the principal of the mortgage loans, and meet the tax obligations. For present purposes all that matters is that before title to the property vested in Carmel, plaintiffs recorded

---

[5] Less, of course, any exemptions and senior encumbrances.

[6] If the transfer is in fraud of the creditor, the creditor may follow the property into the hands of the transferee even if the transfer took place before the lien attached. (See, e.g., *McGee* v. *Allen* (1936) 7 Cal.2d 468, 473 [60 P.2d 1026]; *Liuzza* v. *Bell* (1940) 40 Cal.App.2d 417, 429 [104 P.2d 1095], and cases cited.)

[7] I.e., diminished by any partial satisfaction and increased by any accrued costs and interest.

their abstract of judgment and the lien therefore attached.[8] Carmel thus took with constructive notice of that lien; indeed, in view of her intimate relationship to the debtor it is to be expected that she had actual notice as well. Thereafter and for the remaining life of the lien, under the rule just stated, she contributed to the equity at her peril. An exception to the rule in the circumstances of this case is neither compelled by equitable considerations[9] nor consonant with the strong public policy in favor of satisfaction of judgments expressed in section 674.

In ruling to the contrary, the trial court was in error. Plaintiffs are entitled to enforce their judgment lien, during its remaining lifetime, to the full extent of the current equity in the property in question.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[8]This crucial fact distinguishes two cases relied on by Carmel, in each of which the judgment lien for the husband's predivorce debt attached *after* the community realty had been awarded to the wife as her separate property. (*Harley* v. *Whitmore* (1966) 242 Cal.App.2d 461, 471 [51 Cal.Rptr. 468]; *Ryan* v. *Souza* (1957) 155 Cal.App.2d 213, 215-216 [317 P.2d 655].)

[9]Both parties urge such considerations upon us, but most are speculative. We note the undisputed fact, however, that throughout the period since Carmel took title to the property she has been enjoying the use of one parcel as her family home and has collected and retained the rental income from the other two parcels.