**George J. KENNEY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C03–3848 BZ.

United States District Court, N.D. California.

July 30, 2004.

Benjamin Crispin Sanchez, Martin J. Tierney, Tierney, Watson & Healy, San Francisco, CA, for Plaintiff.

David L. Denier, United States Attorney's Office, San Francisco, CA, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART

ZIMMERMAN, United States Magistrate Judge.

Before me are cross-motions for summary judgment based on stipulated facts.[1] In 1978, plaintiff and his then-wife, Donna, purchased property located at 5239 Colonial Park Court, Fremont, CA (the "Property") as joint tenants. Joint Statement of Undisputed Facts ("JS") ¶¶ 4, 5. In June 1989 plaintiff and Donna permanently separated. *Id.* ¶ 7. At the time of their separation, the Property was encumbered by a promissory note secured by a deed of trust. *Id.* ¶¶ 5, 9. In 1991, plaintiff and Donna executed a second promissory note secured by the Property. *Id.* ¶ 10. Plaintiff and Donna were each liable on the two loans but following their separation in 1989, plaintiff made all payments on the loans. *Id.* ¶¶ 8, 10. Pursuant to oral agreements between Donna and plaintiff in 1989 and 1991, plaintiff agreed to assume responsibility for the two loans encumbering the Property. According to plaintiff, "[n]ecessarily implied" in the agreements was that (1) Donna would not be obligated to make her share of the payments, and (2) payments from plaintiff's separate property on the two loans would increase his interest, and decrease Donna's interest, in the Property. Plaintiff's Motion 5:17–22; JS ¶¶ 8, 10.

The Internal Revenue Service assessed tax liens against Donna, individually, on June 27, 1994, March 6, 1995 and July 27, 1996 (the "IRS liens"). *Id.* ¶ 13. After filing for divorce in 1996, plaintiff and Donna entered into a property settlement agreement on November 29, 1996. *Id.* ¶ 15. A Judgment of Dissolution of Marriage was entered on March 6, 1997. *Id.* Beginning in 1989 and continuing until the Property was sold in July 2002 for $395,000, plaintiff made all payments on the two loans totaling $167,269.00 from his separate property.[2] JS ¶¶ 19, 20.

The cross-motions dispute whether the United States may satisfy the IRS liens from the proceeds from the sale of the Property. The United States argues that the oral agreements are invalid and that the IRS liens, the last of which was assessed on July 22, 1996, attached to Donna's one-half undivided interest in the Property. *Id.* ¶ 13. Plaintiff claims that at the time of assessment, Donna had a negative interest in the Property and, alternatively, that principles of equitable subrogation reduce or eliminate the amount available to satisfy the IRS liens.

■ State law governs the existence and nature of a taxpayer's interest in property to which a federal tax lien may attach. *Aquilino v. United States*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). The parties do not dispute that the Property was purchased and held by plaintiff and Donna as joint tenants. JS ¶¶ 2, 4–6, Exs. A–B. Each spouse has a separate one-half undivided interest in property held in joint tenancy. *Bowman*

---

1. Both plaintiff Kenney and defendant United States of America consented to my jurisdiction pursuant to 28 U.S.C. § 636(c).

2. The Joint Statement states that plaintiff paid $23,168 in principal on the first loan, but Exhibit H states that plaintiff paid $23,609 on the principal. I assumed that the $23,609 figure in Exhibit H is correct.

*v. Bowman,* 149 Cal.App.2d 773, 775, 308 P.2d 906 (1957).

■ A tax lien pursuant to section 6321 of the Internal Revenue Code arises at the time of assessment, and remains in effect until the liability is satisfied. 26 U.S.C. § 6322, § 6321 (IRS lien attaches to "all property and rights to property"); *United States v. Donahue Industries, Inc.,* 905 F.2d 1325, 1330 (9th Cir.1990). Tax liens attach to property rights held by the taxpayer at the time of assessment, as well as to any property rights acquired during the existence of the lien. *Glass City Bank v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945); *Bank of America Nat. Trust & Sav. Ass'n. v. Mamakos,* 509 F.2d 1217, 1219 (9th Cir.1975). IRS acquires by its lien no greater right to property than the taxpayer herself has at the time the lien arises. *United States v. Durham Lumber Co.,* 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960).

■■ All of the IRS liens at issue in this case were assessed by July 22, 1996, which pre-dates the written property settlement agreement extinguishing Donna's interest in the Property. Cal. Fam.Code § 916(a); JS ¶ 13. Applying the foregoing rule, the IRS liens attached to Donna's separate one-half interest in the Property upon assessment. The value of the Property interest to which the IRS liens attached was fixed when the IRS levied on the sale proceeds in 2002 and not upon assessment. *Han v. United States,* 944 F.2d 526, 528–29 (9th Cir.1991); *Bank of America Natl. Trust & Sav. Ass'n v. Mamakos,* 509 F.2d 1217, 1219 (9th Cir.1975). The transfer of Donna's interest pursuant to the property settlement agreement did not extinguish the IRS liens. *See* Cal. Fam Code § 916(a)(2); *United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); *In re Glad,* 66 B.R. 115, 120 (9th Cir.BAP 1986) (citations

omitted); *Lezine v. Security Pacific Financial Services, Inc.,* 14 Cal.4th 56, 65, 58 Cal.Rptr.2d 76, 925 P.2d 1002 (1996) (citing *Kinney v. Vallentyne,* 15 Cal.3d 475, 479, 124 Cal.Rptr. 897, 541 P.2d 537 (1975)). Instead, plaintiff took the Property subject to the IRS liens. *Id.*

The essence of plaintiff's arguments is that by the time the IRS assessed its liens, Donna's interest in the property had been eliminated by virtue of the payments plaintiff had made pursuant to their oral agreements. As plaintiff puts it, "[b]y this time Donna enjoyed no more than bare legal title and a negative equity interest in the property." Plaintiff's Motion, p. 2, 11.2–3.

■ Plaintiff first contends that because he was a "purchaser" of Donna's interest pursuant to § 6323, the tax liens are not valid against the Property because her interest had in effect been extinguished by the time the liens were recorded. *See* 26 U.S.C. § 6323(a) (stating that a "lien imposed by § 6321 shall not be valid as against any purchaser ... until notice thereof ... has been filed"); § 6323(h)(6) (defining "purchaser" as "a person who, for adequate and full consideration in money or money's worth, acquires an interest in property which is valid under local law against subsequent purchasers without actual notice"). The regulation interpreting § 6323(h)(6) states that, for purposes of tax liens, "[a] relinquishing or promised relinquishment of ... marital rights is not a consideration in money or money's worth." 26 C.F.R. § 301.6323(h)–1(a)(3) (2004). Hence, plaintiff's "implied" agreements to increase his interest in the property as Donna relinquished her interest did not make him a purchaser. *Id.; Harris v. United States,* 764 F.2d 1126, 1129 (5th Cir.1985).

■ Plaintiff also argues that the oral agreements were "assumption agree-

ments" whereby Donna's interest was decreased *pro tanto* as plaintiff paid off Donna's obligations under the two loans. These agreements gradually reduced Donna's interest in the property to "bare legal title", thereby eliminating any interest to which the IRS liens could attach upon assessment.[3] Plaintiff's Reply 2:21–22. The assumption agreements, however, are unenforceable because they fall within the Statute of Frauds. *See* Cal. Civ.Code § 1624(a)(1),(2),(3),(6). To avoid this result, plaintiff's counsel argued that the oral agreements fell outside the Statute because they were not agreements to purchase, transmute, convey, or reconvey the Property. *See id.;* Cal. Fam.Code § 852 (property transmutations from one spouse's separate property to the other spouse's separate property must be in writing to be enforceable against third parties). This argument fails for several reasons, one of which is that plaintiff's counsel maintained that under the oral agreements, plaintiff became a "purchaser" for purposes of 26 U.S.C. § 6323(a). Even if the oral assumption agreements were enforceable, plaintiff admits, and there is no evidence to the contrary, that Donna retained her joint tenancy interest in the Property until November 1996 when the property was divided.[4] JS ¶ 15. At best, the oral agreements may have obligated

Donna to reimburse plaintiff for loan payments he made on her behalf from his separate property, but this right vested only upon division of the property pursuant to the 1996 property settlement agreement. *In re Mantle,* 153 F.3d 1082, 1086 (9th Cir.1998) (right to reimbursement arises upon division of property); *Lezine,* 14 Cal.4th at 65, 58 Cal.Rptr.2d 76, 925 P.2d 1002. Language in the property settlement agreement that Donna shall "indemnify and hold [plaintiff] harmless" may also give rise to a cause of action against Donna, but does not shield a portion of the Property sale proceeds from the IRS.

I need not decide whether the factors that constitute equitable subrogation exist so as to reduce the amount available to the United States to satisfy the IRS liens because the parties have agreed that equitable subrogation is appropriate. *See* 26 U.S.C. § 6323(i)(2); *Caito v. United California Bank,* 20 Cal.3d 694, 704, 144 Cal. Rptr. 751, 576 P.2d 466 (1978). The precise amount available remains in dispute. By virtue of their separate one-half undivided interests in the Property, plaintiff and Donna are each entitled to one-half of the net proceeds, or $153,622.00. Plaintiff is entitled to recover from Donna's share $83,634.50, which represents one half of the $167,269.00 in payments made by him

---

**3.** *U.S. v. Johnson,* 200 F.Supp. 589 (D.C.Ariz. 1961), does not support this argument. In *Johnson,* the IRS was attempting to enforce a delinquent taxpayer's liens against his mother's property which the taxpayer had held for a short time in trust for his mother. *Id.* at 592. Relying on Arizona law that permits oral trusts in real property, *Johnson* held that the "bare legal title" the trust granted to the son was not a property right pursuant to 26 U.S.C. § 6321. In reaching its decision, the court recognized the inequity of permitting the IRS to satisfy the delinquent taxpayer's liens from property owned by the mother. The oral agreement purportedly reducing Donna's interest in the Property to "bare legal title" does not raise the same equities as *John-*

*son,* nor dictate the same result, because California does not generally recognize such oral agreements and because the IRS is seeking to reach only Donna's, and not plaintiff's, one-half undivided interest in the Property to satisfy the IRS liens. *See* Cal. Prob.Code § 15206 (generally prohibiting oral trusts in real property unless in writing).

**4.** In 1996, plaintiff and Donna specifically acknowledged her continued interest in the Property in the property settlement agreement when Donna promised to pay one-half of the unpaid $50,000.00 balance on the second loan.

between 1989 and 2002 on the two notes. The remaining $69,987.50 represents Donna's interest in the Property and the amount available to satisfy the IRS liens. I decline to award plaintiff interest on the $83,634.50 since plaintiff has received a return on his investment through the appreciation in the value of the Property.

Defendant contends that the $83,634.50 should be subtracted from the net proceeds of the sale and not just from Donna's one-half interest. Under defendant's calculation, $83,634.50 would be deducted from the net sale proceeds of $307,244.00 leaving a balance of $223,609.50 of which one-half, or $111,804.75, would be available to satisfy the IRS liens. Defendant's calculation causes the amount available to satisfy the IRS liens to increase by $41,871.25. The difference between the calculations is because defendant wishes to deduct $83,634.50 from proceeds in which plaintiff has a one-half interest, effectively forcing plaintiff to pay for half of the $83,634.50 to which he is entitled.

 Equitable subrogation is ultimately an equitable remedy. *See Shaffer v. McCloskey*, 101 Cal. 576, 579, 36 P. 196 (1894); *Estate of Kemmerrer*, 114 Cal. App.2d 810, 814, 251 P.2d 345 (1952) ("As now applied [the doctrine of equitable subrogation] is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter"). Defendant has advanced no equitable reason why plaintiff should not recover the entire $83,634.50 he advanced on Donna's behalf. This ruling and *Caito* both recognize that where a co-tenant encumbers her own separate interest, the encumbrance attaches only to that separate interest. *Caito*, 20 Cal.3d 694, 701, 144 Cal.Rptr. 751, 576 P.2d 466 (1978). Plaintiff is being placed

in a senior position to defendant, but only to the extent of the $83,634 he paid. *Weiss v. United States*, 1991 WL 80868, *2, 1991 U.S. Dist. LEXIS 4166, at *5 (N.D.Cal. March 12, 1991). Equity favors this result, especially where defendant is not a creditor that advanced funds it may not otherwise have advanced had it known of the arrangement between plaintiff and Donna.

For the foregoing reasons, **IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED IN PART**. Defendant is entitled to $69,987.50, which represents Donna's one-half interest in the Property, plus a proportionate share of interest accrued thereon. **IT IS FURTHER ORDERED** that defendant shall submit a proposed form of final judgment no later than **August 4, 2004.**